NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| POE & FRIEREICH, P.A.,<br>        Plaintiffs,<br><br>    v.<br><br>M&M SPORTS INC. AND GRACIANO ROCCHIGIANI,<br><br>        Defendants. | CIVIL ACTION NO. 04-6272 (DRD)<br><br>**OPINION** |

Appearances

POE & FRIEREICH, P.A.
Harvey R. Poe, Esq.
256 Columbia Turnpike
Columbia Commons - Suite 202
Florham Park, New Jersey 07932
and
GRAHAM, CURTIN & SHERIDAN
Christopher J. Carey, Esq.
4 Headquarters Plaza
P.O. Box 1991
Morristown, New Jersey 07962
        *Pro Se Attorneys and co-counsel for Plaintiff*

FITZGERALD & ASSOCIATES, P.C.
Nicholas Fitzgerald, Esq.
649 Newark Avenue
Jersey City, New Jersey 07306
and
SCHLAM, STONE, & DOLAN, LLP
Jeffrey M. Eilender, Esq.
John M. Lundin Esq.
26 Broadway
New York, New York 10004
        *Attorneys for Defendant Graciano Rocchigiani*

## *OPINION*

**DEBEVOISE, Senior District Judge**

Presently before the court are two motions: (1) Plaintiff's motion to dismiss Defendant Graciano Rocchigiani's counterclaim pursuant to Fed. R. Civ. P. 12(b)(6); and (2) Defendant Rocchigiani's motion for judgement on the pleadings, summary judgement, and to release the funds deposited with the court to Schlam Stone & Dolan, LLP. For the reasons set forth below Plaintiff's motion is granted, and Defendant's motion is granted in part/ denied in part.

## *FACTS / PROCEDURAL HISTORY*

Defendant Graciano Rocchigiani ("G.R.") is a professional prizefighter who is a citizen and resident of Germany. Defendant M&M Sports ("M&M") is a New Jersey corporation engaged in the business of promoting professional boxing bouts. On August 28, 2000, G.R. and M&M entered into an agreement for the promotion of certain boxing bouts ("The Agreement"). As part of the Agreement, G.R. agreed to participate in and M&M agreed to promote and stage two boxing bouts between G.R. and different opponents on or about November 4, 2000 and February 28, 2001. (Agreement ¶ 1.1(a) and (b))

The Agreement provided that in the event either party defaulted on their obligation before the first fight took place, upon written demand the non-default party would be entitled to the sum of $70,000 ("escrow funds"). The escrow funds were held by Plaintiff Poe & Friereich ("P&F"), a law firm acting as the escrow agent for the two parties to the agreement. (Agreement ¶ 2.1-2.2)

If the other party objected to the written demand for escrow funds, the parties agreed that P&F would continue to hold the escrow funds until otherwise directed by the parties or until receipt of a final and binding order by a court having jurisdiction over the escrow funds. (Agreement ¶ 3.4). Both parties additionally agreed to submit any dispute arising out of these provisions to the exclusive jurisdiction of the competent court in Berlin, Germany (Agreement ¶ 4.7). G.R. and M&M were referred to throughout the agreement as "the parties," and P&F was referred to as the "escrow agent."

On November 21, 2000, attorneys for G.R. sent a written demand for the escrow funds to P&F alleging that M&M had breached the Agreement by not scheduling the first fight (Pl.'s Br. Ex. B). On December 14, 2000, M&M sent its objection to G.R.'s demand to P&F alleging that G.R. was responsible for the fight not taking place and was therefore in default of the Agreement (Pl.'s Br. Ex D). Pursuant to the Agreement, due to the ongoing dispute between G.R. and M&M, P&F continued to hold the funds in escrow until they were otherwise directed by the parties or received a final and binding order by a court with jurisdiction. Approximately four years later, on December 14, 2004, Attorneys for G.R. sent another letter to P&F demanding the escrow funds and threatening legal action if P&F did not comply (Pl.'s Br. Ex. C). P&F then filed an interpleader complaint in this court on December 21, 2004 in order to: (1) discharge P&F of all liability to G.R. and M&M, (2) determine which of the parties is entitled to the escrow funds, and (3) collect legal fees and costs in the amount of $3,500 for acting as the escrow agent.

On August 18, 2005, G.R. filed an answer and counterclaim to P&F's interpleader complaint. G.R. alleges an intentional breach of P&F's duties as escrow agent by commencing the interpleader action in this court in violation of the terms of the agreement, and requests that

P&F be relieved as escrow agent and substituted by Schlam, Stone, & Dolan, attorneys for G.R.. (Counter Cl. ¶14 and 19)

Sometime after this interpleader proceeding was commenced, G.R. filed a complaint in the Regional Court [Landgericht] of Berlin, Germany seeking an order for the payment of the escrow funds. On September 20, 2005 that court entered a default judgement in favor of G.R. for the full amount of the escrow funds. (Ziegler Aff. Ex. 1)

P&F moves to dismiss G.R.'s counterclaim for failure to state a claim upon which relief can be granted, and G.R. has moved for judgement on the pleadings, summary judgement, and to release the funds deposited with the court to Schlam Stone & Dolan, LLP.

## DISCUSSION

In order to determine all motions presently before the court, it is necessary to determine whether P&F was permitted by the Agreement to file the interpleader action in the District Court. If P&F was so permitted, then Defendant's counterclaims should be dismissed because they do not state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) states in part:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ...(6) failure to state a claim upon which relief can be granted...

Pursuant to Rule 12(b)(6), a complaint shall be dismissed for failure to state a claim upon which relief can be granted only if a court finds "it appears beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 46 (1957); Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980); Craftmatic Sec. Litig. v. Kraftsow, 890 F.2d 628, 634 (3d Cir. 1989).  Allegations contained in the complaint will be accepted as true, Cruz v. Beto, 405 U.S. 319, 322 (1972), and the plaintiff shall be "given the benefit of every favorable inference that can be drawn from those allegations." Schrob v. Catterson, 948 F.2d 1402, 1405 (3d Cir. 1991).  The court is limited to facts contained and alleged in the complaint and may not consider facts raised for the first time by parties in legal briefs.  Hauptmann v. Wilentz, 570 F. Supp. 351, 364 (D.N.J. 1983), aff'd without opinion, 770 F.2d 1070 (3d Cir. 1985).  The Court will accept the alleged facts as true and view them in the light most favorable to the non-moving party.  Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183-84 (3d Cir. 2000).   The question the court must answer is not whether Plaintiff will prevail, but rather whether there are any circumstances that would entitle him to relief. Hishon v. Spalding, 467 U.S. 69, 73 (1984).

   If P&F was permitted by the Agreement to file the interpleader complaint, then G.R.'s counterclaims (alleging an intentional breach of P&F's duties as escrow agent by commencing the interpleader action) clearly do not state a claim.

I.  The Agreement

   The first issue that must be resolved is whether P&F had authority under the Agreement to institute this interpleader action.  The parties to the Agreement, M&M and G.R. disputed entitlement to the $70,000 that P&F held in escrow.  After holding the funds and accumulated interest thereon for more than four years, P&F instituted this interpleader action and paid the

funds into court pursuant to 28 U.S.C. §1335. G.R. contends that by so doing P&F violated its obligations under the Agreement. The escrow was created pursuant to Clause 3.1(a)(ii) of the Agreement and its release was governed by Clauses 3.3 and 3.4 of the Agreement. G.R. relies specifically upon the provisions of Clauses 4.6 and 4.7 to support its contention that P&R could only proceed in a court in Berlin Germany. These clauses read:

> 4.6 The validity, construction and performance of Clause 1 of this Agreement shall be governed by the laws of the Federal Republic of Germany. The parties shall submit any dispute that might arise with respect to Clause 1 of this Agreement to the exclusive jurisdiction of the competent court in Berlin, Germany.
>
> 4.7 The validity, construction and performance of Clause 2, Clause 3 and Clause 4.1 through 4.5 of this Agreement shall be governed by the laws of the Federal Republic of Germany. The parties shall submit any dispute that might arise with respect to Clause 2, Clause 3 and Clause 4.1 through 4.5 to the exclusive jurisdiction of the competent court in Berlin, Germany.

It is G.R.'s position that P&F is a party to the Agreement by virtue of its signing on August 28, 2000 along with M&M and G.R. As such, according to G.R., it is obligated to "submit any dispute that might arise with respect to Clause 2, Clause 3 and Clause 4.1 through 4.5 to the exclusive jurisdiction of the competent court in Berlin, Germany."

When there is no ambiguity, and the court finds no ambiguity here, interpretation of a contract is the exclusive province of the court. An examination of the Agreement in its entirety leads inescapably to the conclusion that P&F is not a "party" within the meaning of Clauses 4.6 and 4.7.

The only factor suggesting that P&R is a party to the Agreement within the meaning of those Clauses is that the law firm signed at its foot along with M&M and G.R. However, even

there the execution was "POE & FREIREICH, as Escrow Agent." Proceeding through the Agreement from its start to its conclusion M&M and G.R. are designated the parties. P&F never is.

At the outset the Agreement states that it is "between Graciano Rocchigiani . . . M&M Sports, Inc." P&F is not mentioned. Nor is P&F mentioned in the recitals that follow.

Clause 1 governs Promotion of the Bouts." The various subsections spell out the obligations of M&M to promote fights and G.R.'s entitlement to payments. P&F is not mentioned.

Clause 2 covers default, during the course of which it refers to the circumstances when G.R. and M&M would be entitled to the Escrow Funds. The Clause commences with the phrase "The <u>parties</u> acknowledge . . ." The "parties" referred to are M&M and G.R.

Clause 3 provides for the settlement of certain outstanding claims arising in a law suit pending in the United States District Court in the Southern District of New York. Clause 3.1 commenced with the language: "Within five (5) days after executing this Agreement the <u>parties</u> shall. . ." One of the provisions was that of the funds being held by the Court there shall be paid "(ii) seventy thousand US Dollars (US $70,000) (the "Escrow Funds") to Poe & Freireich ('Escrow Agent'), as escrow agent, pending fulfillment of the terms and conditions of this Agreement." Note the distribution between those referred to in the Clause as the "parties" and P&F, referred to and defined as "Escrow Agent."

Clause 3.3 provided that '[t]he Escrow Funds shall be held by the Escrow Agent in a segregated attorney's trust account and shall be released to . . ." There followed provisions governing release to M&M and provisions for release to G.R.. Clause 3.4 demonstrates how

7

clearly the Agreement distinguishes between the parties and the escrow agent:

> 3.4   The Escrow Funds shall be distributed as set forth in this paragraph pursuant to the written demand of the party entitled thereto.  Upon receipt of a written demand by either party for payment, Escrow Agent shall give at least five (5) days written notice to the other party of the demand and Escrow Agent's intention to pay the Escrow Funds to the party making the demand.  If Escrow Agent does not receive a written objection to the proposed payment before the date noticed for making payment, Escrow Agent shall make the payment to the party that made the demand.  If the party to whom the notice was given makes a written objection to Escrow Agent within the time set forth in the notice, Escrow Agent shall continue to hold the Escrow Funds until otherwise directed in writing by the parties or receipt of a final and binding order by a court having jurisdiction over the Escrow Funds.

The meaning of "party" or "parties" in Clauses 4.6, 4.7 and 4.8 must be determined in light of all the provisions using those terms that preceded these Clauses.  It is unmistakably clear that "parties" refers to M&M and G.R and not P&F.  P&F is referred to as the escrow agent.  Thus when Clause 4.6 obligates "the parties" to submit any dispute that might arise with respect to Clause 1 of the Agreement to the exclusive jurisdiction of the competent court in Berlin, Germany, no obligation is imposed upon P&F.  Similarly the provision of Clause 4.7 providing that "[t]he parties shall submit any dispute that might arise with respect to Clause 2, Clause 3 and Clause 4.1 through 4.5 to the exclusive jurisdiction of the competent court in Berlin, Germany" imposes no obligation upon P&F as escrow agent.  Nothing in the Agreement prevented P&F from availing itself of the federal interpleader statute when the parties had reached an impasse.

This court became the stakeholder of the escrow fund upon filing of the interpleader complaint.  At that point, as provided by the Agreement, German law continued to govern the rights and obligations of the parties.  Among their obligations was the requirement that they

resort to the competent court in Berlin for an interpretation of the Agreement.  Apparently G.R. has done this and has established his right to the escrow fund less any reasonable attorneys' fee P&F is entitled to.

Therefore, G.R.'s counterclaims will be dismissed.  Due to the agreement by the parties to adjudicate disputes of this sort in the German Court, and that court's subsequent judgement in favor of G.R., the escrow funds, less reasonable attorneys fees, now rightfully belong to G.R. G.R.'s motions for judgement on the pleadings and summary judgement will be denied, but G.R.'s motion for release of the escrow funds to Schlam Stone & Dolan, LLP for disbursement to G.R. will be granted except for the appropriate fees charged by P&F.  During oral argument on these motions, G.R. and P&F agreed that the $3,500 fee charged by P&F for simply filing an interpleader complaint is excessive.  They also stipulated on the record that P&F should receive $700 plus the $250 fee for filing the complaint with the court.  The court will order that this amount be issued to P&F for its services.

## *CONCLUSION*

For all the reasons stated above, P&F's motion to dismiss the counterclaims of G.R. will be granted.  G.R.'s motion for judgement on the pleadings and summary judgement will be denied.  G.R.'s motion  for release of the escrow funds plus all accrued interest to Schlam Stone & Dolan, LLP for disbursement to G.R. will be granted less the stipulated fees charged by P&F.

                                                    /s/ Dickinson R. Debevoise

                                                     Dickinson R. Debevoise, U.S.S.D.J.

November 30, 2005